UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASO RASOOL,<br><br>                    Plaintiff,<br><br>          v.<br><br>ALEJANDRO MAYORKAS, *in his official capacity as United States Secretary of Homeland Security*, et al.,<br><br>                    Defendants. | Case No. 1:21-cv-02367 (TNM) |

## MEMORANDUM ORDER

Plaintiff Aso Rasool sues Secretary of Homeland Security Alejandro Mayorkas, the Department of Homeland Security (DHS), and Andrew Davidson—chief of the Asylum Division of the U.S. Citizenship and Immigration Services (USCIS)—for "unreasonable delay" in adjudicating his asylum application. Compl. ¶ 1, ECF No. 1. Defendants move to transfer this case to the Eastern District of Virginia or, in the alternative, to dismiss. *See* Mot. to Transfer and Dismiss (Mot. to Transfer), ECF No. 9. Mindful that they bear the burden to show that transfer is warranted, the Court will grant their motion under 28 U.S.C. § 1404(a).[1] *See SEC v. Savoy*

---

[1] Defendants urge the Court to transfer the case under 28 U.S.C. § 1406(a) rather than § 1404(a). *See* Mot. to Transfer at 9 n.2. Transfer under § 1406 is proper when the Court determines that venue is lacking. *See* § 1406(a) ("The district court of a district in which is filed *a case laying venue in the wrong division or district* shall dismiss, or if it be in the interest of justice, transfer such case[.]") (emphasis added). Section 1404(a) is proper when the Court determines that it would be more convenient for a case to be heard elsewhere. *See* § 1404(a) ("*For the convenience of parties and witnesses*, in the interest of justice, a district court may transfer any civil action[.]") (emphasis added). The Court need not decide whether venue is proper here because it determines that it is more convenient for the case to be heard in the Eastern District. Thus, the Court will evaluate this case for transfer under § 1404(a).

*Indus., Inc.*, 587 F.2d 1149, 1154 (D.C. Cir. 1978) (finding that the movant "bear[s] the burden of persuasion on the transfer issue").

*First*, the Court examines whether Rasool could have brought his claim in the Eastern District. *Ctr. for Env't Sci., Accuracy & Reliability v. Nat'l Park Serv.*, 75 F. Supp. 3d 353, 356 (D.D.C. 2014) ("The first step in resolving a motion for transfer of venue under § 1404(a) is to determine whether the proposed transferee district is one where the action might have been brought.") (cleaned up). Where the defendant is "an agency of the United States" or "an officer or employee of the United States or any agency thereof acting in his official capacity," 28 U.S.C. § 1391(e) governs venue. *See Montgomery v. Barr*, 502 F. Supp. 3d 165, 174 (D.D.C. 2020). Section 1391(e)(1) provides that a plaintiff may bring a civil action "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred . . . or (C) the plaintiff resides if no real property is involved in the action."

Rasool resides in the Eastern District. *See* Compl. at 1 (listing Rasool's home address in Vienna, Virginia).[2] And he seeks to compel action in the Eastern District. *See* Compl. ¶ 20 (stating that "Defendants allow local offices to adjudicate . . . cases"); Mot. to Transfer at 6 (stating the relevant local office is in Arlington, Virginia). Thus, Rasool could have brought the case in the Eastern District.

*Second*, the Court considers the private interest factors. *See Bourdon v. U.S. Dep't of Homeland Sec.*, 235 F. Supp. 3d 298, 305 (D.D.C. 2017). "The private-interest factors include: (1) the plaintiffs' choice of forum . . .; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the

---

[2] All page numbers refer to the pagination generated by the Court's CM/ECF system.

plaintiff and defendant . . . and (6) the ease of access to sources of proof." *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001).

The first factor, plaintiff's choice of forum, counts for less when, as here, the plaintiff does not reside in that forum. *See Montgomery*, 502 F. Supp. 3d at 179 (explaining plaintiff's choice of venue is entitled to less deference when "plaintiff is not a resident of the forum, the plaintiff resides in the transferee district, and the relevant events occurred there."). The second and third factors both support transfer because Defendants prefer the Eastern District and the claim arose there. *See Nat'l Ass'n of Home Builders v. U.S. E.P.A.*, 675 F. Supp. 2d 173, 179 (D.D.C. 2009) ("In cases brought under the [Administrative Procedure Act], courts generally focus on where the decision-making process occurred to determine where the claims arose.").

Rasool counters that his Complaint seeks an overhaul of the entire asylum system and that because he brings a challenge to national immigration policy, his claims arose in the District of Columbia, home to DHS and USCIS. *See, e.g.*, Compl. ¶ 19 ("This case involves national policy issues that may require the testimony of policymakers here in the District."), ¶ 39(b) (asking the Court to "[o]rder defendants to address the large backlog problem"), ¶ 39(c) (asking the Court to "[o]rder defendants to stop the current arbitrary and capricious system now in effect").

Rasool's arguments fail for three reasons. First, he cannot claim venue in the District "[b]y naming high government officials as defendants" because that could allow "a plaintiff [to] bring a suit here that properly should be pursued elsewhere." *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993); *see also Montgomery*, 502 F. Supp. 3d at 175–77 (finding that local issues predominated over national policies and thus transfer to plaintiff's home district was

3

preferable). "[T]he actions of local USCIS offices are frequently, and appropriately, transferred to the venue encompassing those local offices[.]" *Bourdon*, 235 F. Supp. 3d at 305.

Second, Rasool mistakenly believes that USCIS is headquartered in the District. In fact, it moved to Maryland in December 2020. *See Melnattur v. U.S. Citizen. & Immigr. Servs.*, No. CV 20-3013 (JDB), 2021 WL 3722732, at *3 (D.D.C. Aug. 23, 2021). And it is USCIS, not the Secretary or DHS, that possesses the authority for processing and adjudicating immigration applications. *See* 8 C.F.R. § 100.1 *et seq.* (explaining that USCIS has "been delegated authority under the Immigration and Nationality Act to administer and enforce certain provisions of the Immigration and Nationality Act and all other laws relating to immigration"); *see also id.* § 103.2 *et seq.* (explaining the submission and adjudication of immigration applications by USCIS). So even if Rasool were correct that his challenge to the entire asylum system means his case belongs where policymakers reside, they are not here.

Finally, Rasool's argument fails because although he vaguely alleges that he is challenging DHS's "policy of arbitrary interview scheduling," he does not identify a *specific* DHS policy or national guidance that would tie his Complaint to the District.[3] Opp'n to Mot. to Transfer (Pl.'s Opp'n) at 11, ECF No. 10. This matters because courts in this district have transferred cases even when plaintiffs have identified particular "policy memos disseminated

---

[3] Even if Rasool does identify a policy or national guidance, he misunderstands it. He claims that local USCIS offices can "randomly interview applicants, in any order the local office wants." Compl. ¶ 20. But USCIS follows a last-in, first-out process. *See* USCIS, *Affirmative Asylum Interview Scheduling* (Jan. 26, 2018), https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/affirmative-asylum-interview-scheduling ("Starting January 29, 2018, the Asylum Division will give priority to the most recently filed affirmative asylum applications when scheduling asylum interviews."); *see also Pharm. Rsch. & Mfrs. of Am. v. U.S. Dep't of Health & Hum. Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) ("Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies."). Rasool cannot obtain jurisdiction based on a non-existent policy.

from USCIS headquarters" that the plaintiffs claimed influenced the local office's adjudication of their applications. *Bourdon*, 235 F. Supp. 3d at 306; *see also id.* ("Plaintiff does not explain how any of these alleged errors were dictated by, or even in line with, any nationwide policy or anything else emanating from the District of Columbia. Venue is clearly more appropriate in [the transferee district] for these claims, which make up the majority and gravamen of Plaintiff's complaint."). Thus, Rasool's challenges to immigration policy fail require venue in the District. *See also Montgomery*, 502 F. Supp. at 177 (transferring case in which the plaintiff's claims did not "challenge any policy's broad effects, but rather the *implementation* (or lack thereof) of those policies *as to her*.").

The remaining private interest factors involve ease for the parties and witnesses and the location of evidence. Ease for the parties points to transfer or, at the very least, is neutral. Rasool cannot argue a transfer inconveniences him because a plaintiff "cannot reasonably claim to be inconvenienced by litigating in its home forum." *Tower Lab'ys, Ltd. v. Lush Cosms. Ltd.*, 285 F. Supp. 3d 321, 326 (D.D.C. 2018).

Rasool responds that he would "have to seek out and engage a new lawyer" if the Court transfers the case. Pl.'s Opp'n at 11. But "[t]he location of counsel is not a consideration under this factor." *Wolfram Alpha LLC*, 490 F. Supp. 3d at 333. The Eastern District is convenient for Defendants because that is where the relevant USCIS office and staff are located. Mot. to Transfer at 6, 14; *accord Pasem v. U.S. Citizen. & Immigr. Servs.*, No. 20-CV-344 (CRC), 2020 WL 2514749, at *4 (D.D.C. May 15, 2020) ("The USCIS personnel who best know the individual causes of any delays in processing times will also be available at [the local office]; thus, the convenience to witnesses also tips the scales in favor of transfer."). The private interest factors therefore favor transfer to the Eastern District.

5

*Third*, the Court examines the public interest factors. *Bourdon*, 235 F. Supp. 3d at 305. "These factors include (1) the transferee's familiarity with the governing laws and the pendency of related actions in the transferee's forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Id.* at 308.

The first factor is neutral because this case involves questions arising under federal law, and therefore there is "no advantage to having a federal court familiar and experienced with the state law of [the District of Columbia] adjudicate this action." *Greater Yellowstone Coal.*, 180 F. Supp. 2d at 129. The second factor is also neutral. Defendants highlight statistics showing that the courts here and in the Eastern District face about equal caseloads and disposition times based on several metrics. *See* Mot. to Transfer at 16. To the extent either district is more favorable based on a particular metric, "[s]tatistics provide, at best, only a rough measure of the relative congestion of the dockets in the two districts." *United States v. H & R Block, Inc.*, 789 F. Supp. 2d 74, 84 (D.D.C. 2011).

The most important public interest factor is the interest in deciding local controversies at home. *Accord Wolfram Alpha LLC*, 490 F. Supp. 3d at 338 (stating that "the local interest in deciding local controversies at home" is "perhaps the most important amongst the public factors"). Rasool's Complaint seeks to force the local USCIS office to "adjudicate his asylum application and his withholding application forthwith." Compl. ¶ 39(a). Because "any potential impacts are to be felt locally," transfer to the Eastern District is warranted. *Pres. Soc. of Charleston v. U.S. Army Corps of Eng'rs*, 893 F. Supp. 2d 49, 58 (D.D.C. 2012). This is true even though Rasool challenges an administrative decision. *See McAfee, LLC v. U.S. Citizen. & Immigr. Servs.*, No. 19-CV-2981 (DLF), 2019 WL 6051559, at *1 (D.D.C. Nov. 15, 2019)

("[C]ourts have a local interest in having localized controversies decided at home, including even controversies requiring judicial review of an administrative decision.") (cleaned up).  The public interest factors therefore favor transfer.

The Court finds that Defendants have met their "burden of persuasion on the transfer issue." *Savoy Indus.*, 587 F.2d at 1154.  Because the Court will transfer the case to the Eastern District, it need not reach the substance of Defendant's motion to dismiss and will deny it without prejudice. *See Abusadeh*, 2007 WL 2111036, at *1 ("In light of the transfer of venue, the Court shall not address the substance of Defendants' motion to dismiss but shall deny that motion without prejudice so that Defendants may refile it, if appropriate, upon transfer[.]").

For all these reasons, it is hereby

**ORDERED** that Defendant's Motion to Transfer and Dismiss is GRANTED as to the motion to transfer and DENIED WITHOUT PREJDUICE as to the motion to dismiss; and it is further

**ORDERED** that the Clerk of the Court shall transfer this case to the Eastern District of Virginia, Alexandria Division.

**SO ORDERED**.

Dated:  November 23, 2021                                                     TREVOR N. McFADDEN, U.S.D.J.